UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-2400-MJD-RLY |
| | ) |
| MARTIN O'MALLEY, Commissioner of the Social Security Administration,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Charles M. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). See 42 U.S.C. § 423(d). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in September 2020, alleging an onset of disability as of March 1, 2019. [Dkt. 14-5 at 5.] Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Teresa Kroenecke ("ALJ") on January

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

4, 2022. [Dkt. 14-2 at 35.] On June 10, 2022, ALJ Kroenecke issued her determination that Claimant was not disabled. *Id.* at 14. The Appeals Council then denied Claimant's request for review on October 21, 2022. *Id.* at 2. Claimant timely filed his Complaint on December 14, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant did not engage in substantial gainful activity between the alleged onset date of March 1, 2019, and his date last insured, March 31, 2020. [Dkt. 14-2 at 17.] At step two, the ALJ found that Claimant had the following severe impairments: "lumbar spine degenerative disc disorder, status-post fusion surgery." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 19. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform medium work as defined in 20 CFR 404.1567(c) such that he is limited to lift/carry/push/pull 50 pounds occasionally and 20 pounds frequently; sit for up to one hour at a time for a total of six hours in an eight-hour workday; stand for up to two hours at a time for a total of up to six hours in an eight-hour workday; walk for up to one hour at a time for a total of up to four hours in an eight-hour workday; frequent reaching overhead and in all other directions with the bilateral upper extremities; frequent push/pull with the bilateral upper extremities at the

> previously restricted weight limits; frequent use of foot controls with bilateral lower extremities; occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no exposure to unprotected heights; occasional exposure to moving mechanical parts, operating a motor vehicle, dusts, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, and vibrations; and frequent exposure to humidity and wetness.

*Id.* at 20-21.

At step four, the ALJ found that Claimant was able to perform his past relevant work as a laborer, cashier, food service manager, and credit Clerk during the relevant time period. *Id*. at 24. Alternatively, at step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 26. Accordingly, the ALJ concluded Claimant was not disabled. *Id.*

### IV. Discussion

The ALJ determined that Claimant was not disabled during the relevant time period, which was between March 1, 2019, the alleged onset date, and March 31, 2020, the date last insured. Claimant raises two issues: (1) whether the ALJ erred by failing to consider medical evidence that post-dated the period at issue; and (2) whether the ALJ erred by failing to account for all supported limitations in the RFC. Each of these issues is addressed, in turn, below.

**A. Failure to Consider Later Evidence**

Claimant correctly quotes *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984), as stating that "[t]here can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." Based on this statement, Claimant argues that the ALJ was obliged to consider and discuss his medical records from after March 31, 2020, Claimant's date last insured.

The statement from *Halvorsen* cannot be read literally.  Clearly medical evidence from a time subsequent to a certain period **may be** relevant to a determination of a claimant's condition during that period, but it is not always so.  A simple but dramatic example demonstrates why.  Suppose that one week following his date last insured, a claimant was involved in an automobile accident and became permanently paralyzed from the neck down.  That claimant's medical records from after the automobile accident would certainly demonstrate that he was disabled, but that fact would not be relevant to whether he was disabled prior to his date last insured.  Thus, a more accurate statement of the law is that also quoted in Claimant's brief:  "'[An] ALJ must consider evidence that post-dates the relevant period to the extent that it corroborates or supports the evidence from the relevant period.'"  [Dkt. 21 at 8] (quoting *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1059 (E.D. Wis. 2005)).  Here, Claimant has not identified any such evidence.

On August 13, 2019, during the relevant time period, Claimant was seen at a spine clinic "for evaluation of low back pain radiating to the right lower extremity."  [Dkt. 14-11 at 280.]  An MRI was taken the same day; it showed a "mild asymmetric bulge at L4/5 contributing to mild right and moderate left neural foraminal narrowing" and no disc herniation or central canal stenosis.  [Dkt. 14-7 at 98.]  Claimant underwent a right-sided lumbar laminotomy on September 9, 2019.  [Dkt. 14-11 at 288.]  Two weeks later at a follow-up appointment, it was noted that Claimant did "not have any radicular pain," was "not complaining of significant numbness in his right lower extremity," was "ambulating without difficulty," and was able to drive.  [Dkt. 14-9 at 164.]

In his brief, Claimant states that "October of 2019 treatment notes state that Charles had 'right sided relief following surgery,' but that he was starting to experience left sided symptoms."

5

[Dkt. 21 at 10] (citing R. at 1199).  The cited treatment notes are actually from October **2020**, not 2019.  Those notes state as follow:

> Patient was seen 2 weeks post surgery but then was lost to follow-up.  Patient reports that he had right-sided relief following surgery.  Patient reports that over the last 3 to 4 months[3] he [has] started to experience left-sided symptoms lateral thigh to the knee but does not go past the knee.  Denies any symptoms in his foot.  Patient reports his symptoms are more numbness and tingling rather than pain.  Patient has been seeing a physical therapist who is focusing on increased core engagement and lower extremity flexibility.

[Dkt. 14-9 at 166.]  Thus, the only thing in this note that relates to the relevant time period is the fact that Claimant "had right-sided relief following surgery."  Claimant did not begin to experience the left-sided symptoms until June or July 2020, after the relevant time period.  This is consistent with Claimant's physical therapy notes from September 14, 2020, which state that Claimant had experienced increased left side radicular pain "recently" and that he "has [had] gradual onset of low [back] pain and paresthesia down [his left lower extremity]" since his September 2019 surgery.  [Dkt. 14-10 at 117, 210.]

Claimant also points to a medical record from orthopedic specialist Camden Burns, MD, dated August 18, 2021, stating that "Dr. Burns explained that since [Claimant's] 2019 laminotomy surgery he continues to have back pain radiating down the leg, and has recurrent and new tingling in both legs."  [Dkt. 21 at 12] (citing [Dkt. 14-11 at 257]).  However, the cited note does not state, or even suggest, that Claimant had "continued to have back pain" since his 2019 surgery.  Rather, it states the following:

> 46 year old male presents for evaluation of back pain with radiating leg pain.  Was previously seen by Dr. Burns and actually underwent right sided laminotomy in 2019.  Unfortunately he had recurrent and/or new onset tingling in the left buttock and down the left leg.  Since then, it has progressed and now includes the right

---

[3] Four months prior to October, 2020 would be June, 2020, which is two months **after** Claimant's date last insured.

> leg. Describes it from the lateral thigh, anterolateral calf, and into the dorsum of the bilateral feet. Worse when seated or walking, improved by standing or changing position.

[Dkt. 14-11 at 257.] Nothing in the note suggests anything about Claimant's symptoms between his September 2019 back surgery and March 31, 2020, his date last insured.

Claimant attempts to characterize the medical evidence of record from after his date last insured as shedding light on his condition prior to that date, but a careful examination of that evidence does not support that characterization. Rather, the records pointed to by Claimant demonstrate that his condition improved after his September 2019 surgery and began to worsen again beginning in June or July 2020, after his date last insured. Accordingly, the ALJ did not err by not considering those medical records in assessing Claimant's condition during the relevant time period.

### B. RFC Determination

Claimant also argues that "[t]he ALJ erred by failing to account for all supported limitations in the RFC." [Dkt. 21 at 14.] Much of Claimant's argument regarding this issue relates to the ALJ's failure to consider the evidence relating to Claimant's spinal impairment after his date last insured which, as discussed above, was not erroneous. However, Claimant also argues that the ALJ erred in failing to consider the symptoms caused by Claimant's right knee impairment in arriving at the RFC.

The evidence of record indicates Claimant had multiple surgeries on his knees prior to his alleged onset date, the most recent one being in 2015. Claimant was seen in an emergency room on April 15, 2020, shortly after his date last insured, complaining of right knee pain and "locking" of the knee. Claimant followed up with an orthopedic surgeon two days later; the notes from that visit indicate that Claimant reported that he began experiencing knee pain "about

7

a month ago." [Dkt. 14-9 at 234.] As Claimant notes in his brief, that would mean that Claimant's knee issue began prior to his date last insured. Claimant was diagnosed with a complex tear of his right lateral meniscus and underwent knee surgery on May 11, 2020, to repair it. At a July 2020 follow-up vision, Claimant's surgeon noted that his "preoperative symptoms have resolved" but that "he is having some discomfort, which I think is partly from the healing process after his surgery"; "[h]owever, I think that part of it is arthritic in nature." [Dkt. 14-9 at 229.] In September 2020, Claimant began physical therapy for back pain and right knee pain; he reported that he had experienced right knee pain since his surgery. [Dkt. 14-10 at 117.] A note from an October 2020 visit with his primary care doctor states that Claimant's "right knee pain is located in his 'knee cap' and is stable" and that he reported "constantly walking" for exercise at that time. [Dkt. 14-11 at 233.]

At the hearing, Claimant's attorney noted "the knee" as one of Claimant's severe impairments. [Dkt. 14-2 at 41.] The Claimant testified as follows regarding his knee issues:

> Q: Okay. Now, when I look at your records, it looks like some of the knee surgeries were some years before you started working. Do you—you went through the jobs you did, I don't want to do that in detail, but how many of those jobs were you working hurt at?
>
> A: It would be every job. My kneecap would lock up and I'd have a hard time getting it to unlock once I bent down.
>
> Q: When did some of that start with the kneecap locking?
>
> A: Oh, that started a long time ago. At first I really didn't think nothing about it until it started getting really bad and I stated [sic] going to the doctor.

[Dkt. 14-2 at 54-55.]

> Q: Okay. The knees locking thing that you mentioned, is that still—well, actually, the knee locking thing that you mentioned, is that a regular thing or is that really rare?

> A: It started out as a regular thing.
>
> Q: A regular thing?
>
> A: Yeah, it started out as a regular thing, but I still do have trouble with both my knees. . . . Getting back up from squatting and stuff and bending.

[Dkt. 14-2 at 56.]

The ALJ did not find Claimant's knee condition to be a severe impairment and did not specifically address the evidence regarding Claimant's knee condition that began in March 2020, aside from noting that at an October 2020 visit, Claimant's primary care physician noted arthralgia of the knees but "found no joint swelling, no deformity, and intact range of motion." [Dkt. 14-2 at 18] (citing [Dkt. 14-11 at 24]). The ALJ elsewhere noted that Claimant reported at that visit that he was "constantly walking."

The ALJ's discussion of Claimant's knee condition could certainly have been more thorough and, frankly, the Court's conclusion with regard to whether Claimant had a severe impairment of his knees might well have differed from the ALJ's conclusion. However, "it is not our place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023). Further, Claimant bears the burden of proving that he is disabled. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (citing 20 C.F.R. § 404.1512(a); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017)). Claimant does not point to evidence that would support a finding that his knee impairment was disabling. Even Claimant's own testimony, quoted above, does not support such a finding, as he testified only to "having trouble with both [his] knees" and trouble "[g]etting back up from squatting and stuff and bending" but acknowledged that he had worked while experiencing these issues in the past.

9

Accordingly, the Court cannot find that the ALJ committed reversible error with regarding to her treatment of Claimant's knee condition.

Finally, the Court notes that Claimant argues that the ALJ erred by improperly equating Claimant's daily activities with the ability to perform full-time work. The ALJ, citing to a Function Report completed by Claimant, stated the following:

> The claimant's daily activities suggest his conditions are not as limiting as alleged. For example, he reported having the ability to take care of pets, prepare simple meals, drive a vehicle, spend time with others, and shop in stores.

[Dkt. 14-2 at 22] (citing [Dkt. 14-6 at 18]). It is true that "minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). However, the ALJ did not so find in this case. Rather, the ALJ mentioned Claimant's activities because she found that they "suggest his conditions are not as limiting as alleged." [Dkt. 14-2 at 22.] This was not improper; indeed, the relevant regulations require an ALJ to consider a claimant's daily activities in evaluating subjective symptoms allegations. 20 C.F.R. § 404.1529; *see also Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated.").

Claimant also argues that the ALJ improperly failed to acknowledge the "significant amount of help" Claimant receives from his husband with his daily activities. It is error for an ALJ to rely on a claimant's daily activities without taking into account "*how* he carrie[s] out those activities." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (emphasis in original). Here, however, the hearing testimony cited by Claimant, *see* [Dkt. 21 at 16] (citing [Dkt. 14-2 at 62-

63],[4] does not establish that Claimant receives assistance from his husband for most of the specific activities noted by the ALJ—taking care of pets, preparing simple meals, driving, spending time with others, and shopping in stores.[5] And while Claimant correctly notes that he noted in the Function Report relied on by the ALJ that his husband helped him with pet care when he was in pain, [Dkt. 14-6 at 18], the ALJ's failure to acknowledge that fact does not, by itself, constitute reversible error. *Cf. Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) ("[T]he ALJ's failure to mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal.").

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **AFFIRMED**.

SO ORDERED.

Dated:  2 FEB 2024

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

---

[4] The Court notes that Claimant's brief states that this is Claimant's hearing testimony, but it is actually the testimony of Claimant's husband.

[5] The testimony does mention Claimant's use of a motorized cart when the two of them went grocery shopping.